# NOTE

**Note Date:** 02/24/2020

## PRINCIPAL LOAN TERMS

The terms below are applicable to this Note:

**Property Address:** 30 S 62ND ST, PHILADELPHIA, PA 19139

**Lender:** Finance of America Commercial LLC, a Delaware limited liability company

**Borrower:** ERIE KASH OUT PROPERTIES LLC, a/an Pennsylvania limited liability company

**Principal Amount:** $281,250.00

**Interest Rate:** 6.000% per annum

**Monthly Payment Date:** The 8th day of each month

**Initial Payment Date:** 04/08/2020

**Maturity Date:** 03/08/2050

**Prepayment Premium:** An amount equal to (a) 3% of the Principal Amount prepaid if such Prepayment occurs prior to the first anniversary of the Note Date, (b) 2% of the Principal Amount prepaid if such Prepayment occurs on or after the first anniversary of the Note Date but prior to the second anniversary of the Note Date and (c) 1% of the Principal Amount prepaid if such Prepayment occurs on or after the second anniversary of the Note Date but prior to the third anniversary of the Note Date.

**Monthly Payment Amount:** $1,686.24

**Address for Payments:** 6230 Fairview Rd, Suite 300, Charlotte, NC 28210

**Loan Purpose:** This is a business loan

**Loan Number:** 190016810-001

1. **BORROWER'S PROMISE TO PAY**

    In return for a loan that I have received, I promise to pay the Principal Amount, plus interest, to the order of the Lender. The Lender is Finance of America Commercial LLC. I agree to make all payments under this Note by check, money order, wire transfer or auto-debited Automated Clearing House (ACH) payment.

    I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

2. **INTEREST**

    Interest will be charged on unpaid principal until the Principal Amount has been paid. I will pay interest at the Interest Rate.

    For so long as any default under this Note, the Security Instrument (as defined below) or any related document (collectively, the "Loan Documents") is continuing, the outstanding principal balance of this Note, interest due and payable and any other amounts due and payable under the Loan Documents, will accrue interest at a rate per annum equal to five percent (5%) above the interest rate otherwise provided for in this Note. I will pay interest at the foregoing default rate immediately upon demand, which demand may be made as frequently as the Note Holder determines. Interest at the foregoing default rate will be payable in addition to the late charge described in Section 6(A) of this Note.

    Interest at the rates provided for in this Note will be computed on the basis of a three hundred sixty (360) day year divided into twelve equal months of thirty (30) days each for the actual number of days during the period for which interest is calculated. I acknowledge and agree that the calculation of interest on the basis described in the immediately preceding sentence will result in the accrual and payment of interest in amounts greater than those that would be payable if interest were calculated on the basis of a three hundred sixty-five (365) day year.

3. **PAYMENTS**

    **(A) Time and Place of Payments**

    I will pay principal and interest by making a payment every month.

    I will make my monthly payment on the Monthly Payment Date beginning on the Initial Payment Date. I will make these payments every month until I have paid all of the principal and interest and any other charges that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on the Maturity Date, I still owe amounts under this Note, I will pay those amounts in full on that date. I will continue to pay those amounts both before and after any Survival Event (as defined below), until I have paid all of the principal and interest and any other charges that I may owe under this Note.

    I will make my monthly payments at the Address for Payments or at a different place if required by the Note Holder.

    **(B) Amount of My Monthly Payments**

    My monthly payment amount will be the Monthly Payment Amount.

    **(C) Escrow Items**

    In addition to the payment of principal and interest described above, each month until this Note is paid in full I will make escrow payments for taxes, assessments, insurance and other items as described in the Security Instrument.

4. **BORROWER'S RIGHT TO PREPAY**

    I have the right to make payments of principal at any time before they are due. A payment of principal before it is due is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

    The Note Holder will use my Prepayments to reduce the Principal Amount. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal Amount. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

    On the date on which a Prepayment, voluntary or mandatory, is made (including any amounts collected by the Note Holder after the acceleration of the loan), I will pay to the Note Holder (a) all accrued and unpaid interest on the amount of principal being prepaid through and including the date of such Prepayment and (b) any applicable Prepayment Premium. Notwithstanding the foregoing, no Prepayment Premium will be payable on a Prepayment that is required to be made as a result of a casualty to or the taking by eminent domain of the Property or as set forth in Section 5 of this Note or as otherwise waiver by Note Holder in its sole and absolute discretion.

5. **LOAN CHARGES**

    If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the

Principal Amount or by making a direct payment to me. If a refund reduces the Principal Amount, the reduction will be treated as a partial Prepayment that will not subject to a Prepayment Premium.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of five (5) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be three percent (3%) of that portion of the installment of principal and interest that is overdue. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each Monthly Payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the amount of the Principal Amount which has not been paid, all the interest that I owe on that amount, all outstanding escrow payments and all other amounts due under this Note or the Security Instrument. That date must be at least thirty (30) days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event (as defined below).

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the Address for Payment or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any direct or indirect Interest in the Property is sold or transferred (or if Borrower is not a natural person and a direct or indirect beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. INDEMNIFIED TAXES**

Any payments by or on account of any of my obligations under any Loan Document will be made without deduction or withholding for any tax; *provided, however,* that if any law requires deduction or withholding of a tax, such tax shall be deducted and withheld from such payment and paid to the relevant governmental authority in accordance with applicable law and the amount payable shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable under the Loan Documents) the Note Holder receives an amount equal to the sum it would have received had no such deduction or withholding been made; *provided, further,* that such additional amounts shall not include any taxes measured by net income (however denominated) or franchise taxes imposed on the Note Holder. I will promptly indemnify the Note Holder for all such non-excluded taxes (including interest and additions to tax) and related expenses. I will promptly deliver evidence satisfactory to the Note Holder of any payments made pursuant to this Section 11. I will also pay all documentary, recording, filing or similar taxes that arise with respect to the Security Instrument.

**12. APPLICATION OF PAYMENTS**

Notwithstanding anything to the contrary in any other Loan Document, except during the continuance of a default under any Loan Document, funds delivered to Note Holder in connection with any payment or Prepayment shall be applied in the order of priority set forth in Section 2 of the Security Instrument.

**13. EFFECT OF SURVIVAL EVENTS**

For purposes of this Note, "Survival Event" is defined as follows:

(a) any default described in Section 6(B) of this Note;

(b) the Note Holder requiring me to pay immediately the amount of the Principal Amount which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(c) the Note Holder requiring immediate payment in full of all sums secured by the Security Instrument;

(d) the Maturity Date;

(e) the entry of any judgment against me under this Note; and

(f) the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

ERIE KASH OUT PROPERTIES LLC,
a Pennsylvania limited liability company

By: _____
Name: Tamika Gambrell
Its: Member and Authorized Signer

*[Sign Original Only]*